SHIRLEY S. ABRAHAMSON, C.J.
¶ 62. (.dissenting). The majority disregards its own reasoning to reach a result its opinion does not support.
¶ 63. It might be difficult to determine in some cases whether a particular proceeding is a special proceeding.[1] Nevertheless, when I apply the majority opinion's definition of a "special proceeding" to the instant cases, the most legally sound conclusion is that proceedings on a Chapter 980 petition for discharge are special proceedings.
¶ 64. Wisconsin Stat. § 907.02(1) (2011-12) sets forth the Daubert standard for the admissibility of expert testimony.[2] In enacting this statute, the legislature decreed that the Daubert standard first applies "to actions or special proceedings that are commenced on the effective date of this subsection [February 1, 2011]."[3]
¶ 65. Michael Alger and Ronald Knipfer, hereinafter referred to as the petitioners, filed Chapter 980 discharge petitions after February 1, 2011. Thus, whether the Daubert standard applies to their discharge proceedings turns on whether these petitions *233 "commenced" "actions" or "special proceedings" under the session law adopting the Daubert standard in Wis. Stat. § 907.0U).[4]
¶ 66. All Chapter 980 proceedings are included in the Wisconsin Judicial Benchbook in its section on special proceedings. After a careful examination of the definition of "special proceeding" in Black's Law Dictionary., which the majority opinion employs; the case law regarding special proceedings on which the majority opinion relies; the detailed provisions of Chapter 980 governing commitment proceedings and discharge proceedings; and the legislative purpose for adopting the Daubert standard, I conclude that the petitioners commenced special proceedings by filing their Chapter 980 petitions for discharge. Thus, the Daubert standard should have been applied at the proceedings on the petitioners' discharge petitions. The majority opinion's contrary conclusion is unpersuasive.
¶ 67. Accordingly, I would remand the instant cases to their respective circuit courts to determine whether the challenged testimony satisfies the Daubert standard.
I
¶ 68. The majority opinion adopts the definition of "special proceeding" in Black's Law Dictionary: "A proceeding that can be commenced independently of a pending action and from which a final order may be appealed immediately."[5]
¶ 69. This definition contains two criteria. First, a special proceeding "can be commenced independently *234 of a pending action."[6] Second, a special proceeding must result in a "final order" that can "be appealed immediately."[7]
| 70. I apply this definition to proceedings on a Chapter 980 discharge petition. I begin with the second criterion: Special proceedings result in a final order that can be appealed immediately.
¶ 71. Proceedings on a Chapter 980 discharge petition easily meet this second criterion. A circuit court's decision granting or denying a Chapter 980 petition for discharge is, by statute, a final order that can be appealed immediately. See Wis. Stat. § 980.095(3) ("Any party may appeal an order under this subsection as a final order under chs. 808 and 809.").
¶ 72. I now turn to the first criterion in the definition: Special proceedings "can be commenced independently of a pending action."[8]
¶ 73. There was no pending action when the petitions for discharge were filed in the instant cases. After an individual has been adjudicated a "sexually violent person" and the circuit court has entered a judgment and commitment order, the original Chapter 980 commitment proceedings are at an end.[9] If the *235 committed person wants to be discharged, the person must file a petition in the committing court.[10] In other words, the commitment proceedings have ended by the time a petition for discharge is filed.
¶ 74. I now tackle the phrase "commenced independently." In the instant cases, this phrase must mean "commenced independently of the original commitment proceedings."
¶ 75. The majority opinion concludes that proceedings on a Chapter 980 discharge petition are not commenced independently of the original commitment proceedings, but rather are part of the original commitment proceedings.[11] This is where the majority opinion loses its way. The majority opinion departs from its definition of "special proceeding" and does not adhere to the cases it cites in support of its position.
¶ 76. The majority opinion cites several Wisconsin cases to provide examples of special proceedings.[12] These cases do not support the majority opinion's application of the Black's Law Dictionary definition of "special proceeding" to the instant cases. Rather, the cases cited by the majority opinion support the conclusion that proceedings on a Chapter 980 discharge petition are special proceedings. See, for example, the following:
• Ernst v. The Steamer "Brooklyn", 24 Wis. 616, 617 (1869), provides three examples of proceedings that *236 are "readily recognized" as special proceedings: "proceedings to attach for contempt, [proceedings] to obtain discovery of books, [and] proceedings supplementary to an execution." All three of these "readily recognized" special proceedings relate to an underlying action but are nevertheless treated as being commenced independently of any other action or proceeding.
In a later case, Witter v. Lyon, 34 Wis. 564, 574 (1874), the court reaffirmed the determination in Ernst that a proceeding "to obtain discovery of books" is a special proceeding. The court expressly rejected the contention that "there can be no special proceeding which grows out of, or is connected with, a pending action."[13]
• In Foss v. Stoll, 141 Wis. 267, 271, 124 N.W.2d 89, (1910), the court held that the proceeding required by statute to "revive" a case on behalf of a party who died after the case commenced is classified as a special proceeding. The Voss court stated that "[t]he test to be applied in determining the nature of any judicial remedy, as regards whether it is a special proceeding, is whether it is a mere proceeding in an action, or one independent]] thereof or merely connected therewith."[14]
Thus, as in Ernst and Witter, the Voss court acknowledged that special proceedings will often be "connected" with another proceeding.
• In Wellens v. Kahl Insurance Agency, Inc., 145 Wis. 2d 66, 426 N.W.2d 41 (Ct. App. 1988), the court of appeals referred to contempt proceedings as special proceedings, just as this court did in Ernst. A contempt proceeding is one in which a "court of record [] impose [s] a remedial or punitive sanction" *237 for a person's misconduct or disobedience in a court proceeding.[15] A contempt proceeding is therefore factually connected to a prior or pending action but is classified as a special proceeding.
• In Ryder v. Society Insurance, 211 Wis. 2d 617, 565 N.W.2d 277 (Ct. App. 1997), the court of appeals stated that "[s]pecial proceedings include[] all remedies that [a]re not ordinary actions." Chapter 980 petitions for discharge provide a remedy for institutionalized persons, and as we explain more fully later on, the legislature has established special rules applicable to these proceedings.
The court of appeals in Ryder also stated that matters "incident to an existing action" are not special proceedings.[16] Again, as we explain more fully later on, proceedings on a Chapter 980 discharge petition are, by statute, not incident to the original commitment proceedings. Rather, they are separate and distinct proceedings.
¶ 77. In sum, the case law demonstrates that proceedings this court has previously classified as special proceedings have a connection with prior or pending actions or proceedings but are nevertheless viewed as independent special proceedings.
¶ 78. Furthermore, Chapter 980 makes clear that proceedings on a discharge petition are governed by a set of statutory rules and procedures different from (and independent of) those governing Chapter 980 commitment proceedings. Moreover, the two proceedings examine the condition of the person at differ *238 ent times. Thus, although proceedings on a Chapter 980 discharge petition share a factual history with the original commitment proceedings, they are nevertheless independent of the commitment proceedings.
¶ 79. The provisions of Chapter 980 relating to the initial commitment proceedings govern notice to the department of justice and district attorney;[17] the contents and filing of a petition alleging that a person is sexually violent;[18] the rights of persons subject to such petitions;[19] examination of the person alleged to be sexually violent;[20] change of the place of jury trial from another county;[21] "discovery and inspection";[22] detention, probable cause hearings, and transfer for examination;[23] the commitment trial;[24] commitment itself;[25] and various other procedural matters.[26]
¶ 80. In contrast, Wis. Stat. §§ 980.09 and 980.095 govern proceedings on a Chapter 980 discharge petition. These provisions control the filing of a petition for discharge, its contents, the burden of proof, the appropriate methods for demanding and selecting a jury, receipt of a jury verdict and its effect, and the filing of postverdict motions and appeals from orders granting or denying discharge.
¶ 81. The differences between commitment proceedings and proceedings on a petition for discharge are substantial and significant, demonstrating that *239 proceedings on a discharge petition are separate from and independent of the initial commitment. For example:
• At the commitment proceedings, the State "has the burden of proving beyond a reasonable doubt that the person ... is 0 sexually violent,"[27] and a jury verdict on whether the State has met its burden "is not valid unless it is unanimous."[28] In contrast, at a proceeding on a petition for discharge, the State "has the burden of proving by clear and convincing evidence that the person meets the criteria for commitment as a sexually violent person,"[29] and agreement by just five of the six jurors is sufficient for a verdict.[30]
• The person against whom a petition for involuntary commitment has been filed is automatically entitled to a jury trial,[31] while a committed person who files a petition for discharge is entitled to a jury trial only if "the petition alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order .. . ,"[32]
• The focus at the original commitment proceedings is on the person's condition at the time of those proceedings. The focus at discharge proceedings is on the committed person's condition at the time the discharge petition was filed. The circumstances that existed at the time of commitment are no longer dispositive.
*240 • A petition for discharge must allege facts that are new since the commitment order was entered.[33] In other words, the petition must include "something more than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding that determined the person to be sexually violent" from which the jury or court could conclude that the person no longer meets the criteria for commitment.[34]
¶ 82. These statutory provisions are persuasive evidence that proceedings on a petition for discharge are separate from and independent of the original commitment proceedings. They persuade me that filing a petition for discharge commences (that is, begins) a special proceeding to which the Daubert standard applies.
¶ 83. It is a truism that without a Chapter 980 commitment order, there would be no proceedings on a petition for discharge. This connection does not, however, make a petition for discharge or a proceeding on that petition "part of' the initial commitment proceedings. Rather, Chapter 980 demonstrates that the two proceedings share a common factual history but are independent and separate.
¶ 84. The purpose of the statute adopting the Daubert standard and "the consequences of alternative interpretations" also inform my interpretation.[35] *241 Courts decline to read statutes in a way that produces absurd, implausible, or unreasonable results, or results that are at odds with the legislative purpose.[36] Interpreting Wis. Stat. § 970.02(1) as applying the Daubert standard to proceedings on a petition for discharge filed after February 1, 2011, avoids an absurd, unreasonable, or implausible result clearly at odds with the legislature's purpose and takes into consideration the consequences of alternative interpretations.
¶ 85. The legislature adopted the Daubert standard as part of broader tort reform legislation, obviously intending to impose a more stringent standard to the admission of expert testimony in Wisconsin. The legislature did not, however, limit the Daubert standard to tort cases or even to civil cases. The legislature adopted the Daubert standard for all cases, civil and criminal.
¶ 86. The legislature adopted the Daubert standard to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[37]
¶ 87. The statute adopting the Daubert standard, Wis. Stat. § 907.02(1), provides as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of *242 reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.
(Emphasis added.)
¶ 88. The standard for the admissibility of expert testimony that applied when the petitioners were initially committed lacked the reliability requirement set forth in Wis. Stat. § 907.02(1) (underlined above). This pre-Daubert standard provided as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.[38]
¶ 89. As Professor Daniel D. Blinka explains, the Daubert standard adopted by the Wisconsin legislature requires that "[t]he expert's testimony [] be grounded in an accepted body of learning or experience in the expert's field, and [that] the expert [] explain how the conclusion is so grounded."[39]
¶ 90. When I examine the legislative purpose for adopting the Daubert standard and "the consequences of alternative interpretations" of the Daubert statute, the answer is clear: The Daubert standard applies in the instant cases. It seems to me the legislature would want to have only reliable expert witnesses, whose testimony is grounded in an accepted body of learning *243 or experience in the expert's field, testify on behalf of either the State or the petitioner in Chapter 980 discharge petition proceedings.
¶ 91. The proceedings on a petition for discharge result in either the release of a committed sex offender or the continued institutionalization of that offender. A huge liberty interest is at stake in Chapter 980 proceedings. A Chapter 980 commitment is indefinite in duration and is therefore tantamount to a life sentence in a custodial setting. Consequently, Chapter 980 reflects a "delicate balancing of the public safety with individual liberty."[40] Based on the profound importance of the interests at stake, it is only logical that the legislature would seek to ensure the reliability of the expert testimony presented at proceedings on a Chapter 980 petition for discharge.
¶ 92. Why would the legislature apply the less stringent relevance-based standard rather than the more stringent reliability-based standard at proceedings on a Chapter 980 petition for discharge filed after February 1, 2011? The simple, obvious answer is it would not. To fulfill the purpose of Chapter 980 discharge proceedings, the Daubert standard should be used.
¶ 93. Furthermore, the majority opinion's interpretation extends the application of the pr e-Daubert standard indefinitely. Decades might pass between a commitment order and the filing of a petition for discharge. Why would the legislature want to have different evidentiary rules applied for many, many years into the future to persons similarly situated? It would not.
*244 ¶ 94. Under the majority opinion's interpretation, discharge proceedings for a person committed on January 31, 2011, and a person committed on February 1, 2011, are governed by different evidentiary rules. The majority opinion's interpretation creates confusion for committed persons, lawyers, and the courts.
¶ 95. With these implications of the majority opinion's alternative interpretation in mind, I think it is clear that the legislature would want expert testimony that is reliable under Daubert presented at proceedings held on petitions for discharge filed after February 1, 2011.
¶ 96. In sum, I conclude that the Daubert standard governs the expert testimony presented at the proceedings on the petitioners' Chapter 980 discharge petitions. The majority opinion's contrary conclusion is unpersuasive.
II
¶ 97. The petitioners also raise constitutional claims. The constitutional question presented is whether applying the Daubert standard to only those discharge petition proceedings for which the original commitment proceedings commenced on or after February 1, 2011, violates the petitioners' constitutional rights to equal protection and due process of law.[41]
¶ 98. The majority opinion determines that rational basis review applies to the petitioners' constitu *245 tional claims because applying the Daubert standard to proceedings on a discharge petition only when the original commitment proceedings commenced on or after February 1, 2011, neither "implicates a fundamental right nor discriminates against a suspect class."[42] The majority opinion further determines that "the legislature's decision to apply the Daubert [] standard to 'actions' or 'special proceedings' 'commenced' on or after February 1, 2011, satisfies rational basis review and therefore is constitutional."[43]
¶ 99. Because I conclude that the Daubert standard should have been applied at the proceedings on the petitioners' discharge petitions, I need not reach the constitutional questions presented.
¶ 100. Nevertheless, I disagree with the majority opinion's conclusion on this point. Even if rational basis review is the appropriate level of scrutiny, which is far from clear (a person committed under Chapter 980 is detained indefinitely), there appears to be no rational basis for applying the Daubert standard to proceedings on a discharge petition only when the original commitment proceedings commenced on or after February 1, 2011. In my view, the legislative classification produced by the majority opinion's interpretation of 2011 Wis. Act 2, § 45(5) fails to pass constitutional muster.
¶ 101. For the reasons set forth, I dissent.
¶ 102. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

 See Ernst v. The Steamer "Brooklyn", 24 Wis. 616, 617 (1869) ("It may not be easy in all cases to determine what is a special proceeding.").

 See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-90 (1993).
All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 2011 Wis. Act 2, § 45(5).

 See 2011 Wis. Act 2, § 45(5).

 Black's Law Dictionary 1398 (10th ed. 2014).

 Id.

 Id.

 Id.

 See Wis. Stat. § 980.05(5) ("If the court or jury determines that the person ... is a sexually violent person, the court shall enter a judgment on that finding and shall commit the person as provided under s. 980.06. . . ."); Wis. Stat. § 980.06 ("If a court or jury determines that the person who is the subject of a petition under s. 908.02 is a sexually violent person, the court shall order the person to be committed to the custody of the department for control, care and treatment. . . .").

 See Wis. Stat. § 980.09(1) ("A committed person may petition the committing court for discharge at any time. The court shall deny the petition. . . unless the petition alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order . . ..").

 Majority op., ¶¶ 26, 31.

 See majority op., ¶ 29.

 Witter v. Lyon, 34 Wis. 564, 574 (1874).

 Voss v. Stoll, 141 Wis. 267, 271, 124 N.W.2d 89 (1910) (emphasis added).

 See Wis. Stat. § 785.02 (regarding the power of the court to punish for contempt of court); see also Wis. Stat. § 785.01 (defining "contempt of court").

 Ryder v. Society Ins., 211 Wis. 2d 617, 619, 565 N.W.2d 77 (Ct. App. 1997).

 Wis. Stat. § 980.015.

 Wis. Stat. § 980.02.

 Wis. Stat. § 980.03.

 Wis. Stat. § 980.031.

 Wis. Stat. § 980.034(1).

 Wis. Stat. § 980.036.

 Wis. Stat. § 980.04.

 Wis. Stat. § 980.05.

 Wis. Stat. § 980.06.

 Wis. Stat. § 980.038.

 Wis. Stat. § 980.05(3)(a).

 Wis. Stat. § 980.03(3).

 Wis. Stat. § 980.09(3).

 Wis. Stat. § 980.095(l)(c).

 Wis. Stat. § 980.03(3).

 Wis. Stat. § 980.09 (emphasis added).

 Wis. Stat. § 980.09 (requiring the petitioner to allege "facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment. . . ").

 State v. Combs, 2006 WI App 137, ¶ 32, 295 Wis. 2d 457, 720 N.W.2d 684; see also State v. Kruse, 2006 WI App 179, ¶ 35, 296 Wis. 2d 130, 722 N.W.2d 742.

 Legue v. City of Racine, 2014 WI 92, ¶ 61, 357 Wis. 2d 250, 849 N.W.2d 837.

 Hubbard v. Messer, 2003 WI 145, ¶ 9, 267 Wis. 2d 92, 673 N.W.2d 676.

 Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993) (citations omitted).

 Wis. Stat. §907.02 (2003-04); Wis. Stat. §907.02 (2005-06).

 Daniel D. Blinka, The Daubert Standard in Wisconsin: A Primer, Wis. Lawyer, Mar. 2011, at 60 (quoting Fed. R. Evid. 702 advisory committee note (2000 amendment)) (first alteration in original).

 State v. West, 2011 WI 83, ¶ 100, 336 Wis. 2d 578, 800 N.W.2d 929.

 Specifically, Alger argues that applying the Daubert standard to only those discharge petition trials for which the original commitment action commenced on or after February 1, 2011, violates his constitutional right to equal protection. Knipfer argues that applying the Daubert standard to only those discharge petition trials for which the original commit *245 ment action commenced on or after February 1, 2011, violates his constitutional rights to equal protection and due process.

 Majority op., ¶ 39; see also majority op., f 42.

 Majority op., ¶ 55.